United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JIBRI PEAVY,
Plaintiff,
v.
ALLISON HALEY, et al.,
Defendants.

Case No. 25-cv-10218-WHO

**ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION**

Re: Dkt. No. 62

Plaintiff Jibri Peavy moves to alter or amend the judgment entered in this case pursuant to Federal Rule of Civil Procedure 59(e). Peavy argues that, in dismissing her amended complaint without leave to amend, I made "five independent manifest errors of law." Motion for Reconsideration ("Mot.") [Dkt. No. 62] at 1. For the reasons set forth below, Peavy's motion for reconsideration is DENIED.

**BACKGROUND**

The background of this matter is thoroughly set out in my previous order dismissing Peavy's amended complaint with prejudice and I will only briefly summarize it here. Order Dismissing Amended Complaint ("Order") [Dkt. No. 58] at 1–3. Peavy alleges that Napa County District Attorney Allison Haley and the Napa County District Attorney's Office began criminal proceedings against her in early 2025. Amended Complaint ("Compl.") [Dkt. No. 38] at 6. She asserts that "[d]espite possessing Plaintiff's verified address, Defendant Haley personally authorized the use of a fictitious address [for the Notice to Appear] in sworn affidavits to the court." *Id.* at 6. When Peavy did not appear for the hearing, a bench warrant was issued against her. *Id.* at 5–6. She eventually appeared in court where she was granted a diversion. *Id.* at 5. She completed the diversion program and "[c]onsequently, the prosecution resulted in no conviction."

United States District Court
Northern District of California

*Id.*

On February 25, 2026, Peavy filed an amended complaint, alleging three causes of action under 42 U.S.C. § 1983: (1) violation of her Fourteenth Amendment right to Due Process for failure to mail her Notice to Appear to the correct address; (2) violation of her Sixth Amendment right to counsel and a speedy trial for "maintaining a 'secret' docket through defective service"; and (3) a *Monell* claim based on prosecutorial misconduct for the "use of unreliable information and the failure to verify addresses . . . ." Compl. at 11. On April 29, 2026, I dismissed this complaint for failure to state a claim and entered judgment. Peavy now moves for reconsideration of this judgment.

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 59(e), a party may move to "alter or amend a judgment" within 28 days of its entry. The Ninth Circuit has cautioned that this is an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003) (citation omitted). A district court may grant a motion brought under Rule 59(e): "(1) if such motion is necessary to correct manifest errors of law or fact upon which the judgment rests; (2) if such motion is necessary to present newly discovered or previously unavailable evidence; (3) if such motion is necessary to prevent manifest injustice; or (4) if the amendment is justified by an intervening change in controlling law." *Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1111 (9th Cir. 2011). Rule 59(e) may not, however, "be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008) (citation omitted).

"While courts within the Ninth Circuit have not strictly defined what constitutes clear error for Rule 59(e) motions, courts have generally found that mere doubts or disagreement about the wisdom of a prior decision of the court will not suffice." *Bey v. Malec*, No. 18-cv-02626-SI, 2020 WL 3058336, at *2 (N.D. Cal. June 9, 2020) (citations and internal modifications omitted). "Rather, for there to be clear error, the previous decision must strike a court as more than just maybe or probably wrong; it must be dead wrong." *Id.* (same).

**DISCUSSION**

In her motion for reconsideration, Peavy does not raise any new evidence or suggest that there has been an intervening change in law to justify a different outcome. Instead, Peavy argues that my prior order "contains clear errors of law on five independent grounds": (1) it "cites *Botello v. Gammick* [413 F.3d 971 (9th Cir. 2005)] and then fails to apply it"; (2) it "ignores" another case's (*Kalina v. Fletcher*, 522 U.S. 118 (1997)) "direct application to Haley's personal certification of a fictious address in sworn documents"; (3) it "applies an incorrect pleading standard to a due process claim supported by documentary exhibits already in the record"; (4) it "treats completion of a diverted criminal proceeding as extinguishing independent Section 1983 claims"; and (5) it "denies leave to amend where amendment could cure the identified deficiencies under *Foman v. Davis* [371 U.S. 178 (1962)]." Mot. at 2, 5. I address each of these points in turn.

Peavy's first and second contentions address the application of prosecutorial immunity to Haley's actions. In my prior order, I concluded that Haley's actions were subject to prosecutorial immunity because they were "the work of an advocate . . . integral to the initiation of the prosecution." Order at 6 (quoting *Kalina*, 522 U.S. at 130). Peavy argues in her first contention that I failed to consider cases—specifically, *Botello* and a U.S. Supreme Court case, *Buckley v. Fitzsimmons*, 509 U.S. 259 (1993)—that establish that "[t]he decision to identify a mailing address for a defendant and certify that address as correct in sworn affidavits submitted to the court is an administrative function" and should not enjoy the protection of prosecutorial immunity. Mot. at 2.

To determine whether absolute immunity applies to a prosecutor's actions, a court must conduct a fact-based inquiry into the "nature of the function at issue." *Botello*, 413 F.3d at 975–76. Prosecutorial immunity is not absolute and does not extend to conduct by prosecutors that is administrative, investigative, and/or untethered to judicial proceedings. *Id.* Absolute immunity is appropriately applied to "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial." *Buckley,* 509 U.S. at 273; *see also Botello*, 413 F.3d at 976 (quoting *Burns v. Reed*, 500 U.S. 478, 494 (1991)) ("[I]t is clear that absolute prosecutorial immunity is justified 'only for actions that are connected with the prosecutor's role in judicial proceedings, not for every litigation-inducing conduct.'").

United States District Court
Northern District of California

While *Buckley* and *Botello* are instructive on the general rule for prosecutorial immunity, neither speaks directly to the facts at issue. In *Buckley*, the court declined to extend absolute immunity to prosecutors who had fabricated evidence. 509 U.S.at 274–76. The court found that the prosecutors were behaving as investigators, not advocates, during the time that they allegedly fabricated the evidence and thus were only entitled to qualified immunity. *Id.* at 274–75. The court noted that "[w]hen the functions of prosecutors and detectives are the same, as they were here, the immunity that protects them is also the same." *Id.* at 276.

Similarly, in *Botello*, the court rejected the prosecutors' attempt to assert absolute immunity for their conduct telephoning a potential employer of a former colleague to attempt to stop him from being hired. 413 F.3d at 977. The court further declined to apply absolute immunity to prosecutors' actions "insisting that [their colleague] be barred from any aspect of the investigative process, even from the earliest stages of preliminary investigations" because this was "in essence dictating to local law enforcement authorities how future criminal investigations should be conducted and staffed—an administrative function." *Id.* However, the court determined that the prosecutors' decision not to prosecute any cases where this colleague had "participated in any phase of the investigative process" *was* protected by absolute immunity because it was a decision "intimately tied to the judicial process." *Id.* [1] The activities at issue in these two cases do not bear a resemblance to Haley's alleged misconduct in using a fictitious address for the notice.

More relevant to the question of prosecutorial immunity is the case Peavy cites in support of her second challenge. Peavy argues that I misapplied the Ninth Circuit's decision in *Kalina* by failing to recognize that Haley was acting as a witness, not an advocate, when she offered sworn statements regarding Peavy's address. Mot. at 3. In *Kalina*, the court determined that a

[1] Later in her motion, Peavy also raises *Malley v. Briggs*, 475 U.S. 335, 343 (1986), stating that it provides "an additional and independent basis for denying absolute immunity." Mot. at 4. *Malley* addressed an officer applying for an arrest warrant. 475 U.S. at 342. The Court specifically differentiated this action from a prosecutor seeking an indictment. *Id.* at 342–43 ("We intend no disrespect to the officer applying for a warrant by observing that his action, while a vital part of the administration of criminal justice, is further removed from the judicial phase of criminal proceedings than the act of a prosecutor in seeking an indictment."). *Malley* is inapplicable here.

United States District Court
Northern District of California

prosecutor was not protected by absolute immunity when she provided a sworn certification of the facts to support issuance of an arrest warrant. 522 U.S. at 129–31. The court noted that "her drafting of the certification, her determination that the evidence was sufficiently strong to justify a probable-cause finding, her decision to file charges, and her presentation of the information and the motion to the court" would all be activity protected by absolute prosecutorial immunity. *Id.* at 130. However, personally certifying that the facts submitted in the affidavit were true was "an act that any competent witness might have performed" and therefore, not entitled to prosecutorial immunity. *Id.* at 129–30.

Peavy argues that this is what Haley did here, "personally certified as true . . . that the fictitious address was Plaintiff's correct address." Mot. at 3. While Peavy's allegations are conclusory, they bear some resemblance to the situation addressed in *Kalina*. But even if there was error in my application of prosecutorial immunity, it would be immaterial because my Order also addressed the merits of each of Peavy's claims and determined that they independently warranted dismissal for failure to state a claim. The outcome of the Order did not depend solely on the application of prosecutorial immunity.

Under her third contention, Peavy asserts that I erred in dismissing her Fourteenth Amendment Due Process claim because her allegations against defendants were not conclusory and were supported by "documentary evidence" that she submitted. Mot. at 3–4. As an initial matter, it is not clear what documentary evidence she is referring to, the documents attached to her amended complaint or some other "evidence." Furthermore, in my prior order, I explained:

> Although Ms. Peavy has alleged in a conclusory statement that "[d]espite possessing Plaintiff's verified address, Defendant Haley personally authorized the use of a fictitious address in sworn affidavits to the court," she has not sufficiently alleged facts that demonstrate that the Government (1) learned that its attempt to provide notice was unsuccessful, or that (2) it failed to take reasonable steps to effect practicable notice. She thus fails to state a claim for violation of due process as it relates to her address allegations.

Order at 4.

Peavy argues that under the Supreme Court's decision in *Mullane v. Central Hanover*

*Bank and Trust Co.*, 339 U.S. 306 (1950),[2] "the deliberate submission of a known fictious address in sworn affidavits [does not] constitute[] notice reasonably calculated to inform the intended recipient." Mot. at 4. The issue here is not whether such conduct would constitute improper notice; it is that Peavy has failed to allege sufficient facts showing that this is what took place. Under Supreme Court precedent, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted) (plaintiff must plead facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"). Peavy's complaint does not meet this standard on her Fourteenth Amendment claim. For example, she does not describe how Haley knew the address was incorrect or from where the address was obtained. She does not explain how she did find out about the case against her and appeared in court. The bare allegation that Haley knew the correct address but simply used a different one is not sufficient. There was no error regarding dismissal of this claim.

In her fourth contention, Peavy argues that I incorrectly dismissed her constitutional claims because she was involved in a court-ordered diversion program. Mot. at 4. In my prior Order, I referenced the diversion program in the context of my analysis of her claim based on violation of her Sixth Amendment rights. I stated that:

> In her complaint, Ms. Peavy alleges that her case was moved to the Napa County Court's Diversion program. It is unclear whether Ms. Peavy was ever charged for a crime, whether she entered Diversion as a condition of or prior to accepting a plea, whether she ever sought the assistance of counsel, or whether she was ever informed of her right to counsel. She merely states, again in a conclusory fashion, that "Defendants prevented Plaintiff from exercising her right to an attorney and a prompt resolution of the charges" because they "maintain[ed] a 'secret' docket through defective service." This conclusory allegation does not state a claim for violation of her Sixth Amendment rights.

Order at 4–5. My determination only pertains to Peavy's Sixth Amendment claim, not all her constitutional claims. And I did not conclude that the fact she was in a diversion program

---

[2] *Mullane* stands for the general proposition that due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." 339 U.S. at 314. Its facts, however, which involve "sufficiency of notice to beneficiaries on judicial settlement of accounts by the trustee of a common trust fund" do not provide significant guidance in this matter. *Id.* at 307.

invalidates the Sixth Amendment claim; I found that she had not pleaded facts sufficient to establish a Sixth Amendment claim. As discussed above, Peavy's pleading did not meet the standard set by the Supreme Court in *Iqbal* and *Twombly*. A complaint that does not meet these standards cannot proceed.

Finally, in her fifth contention Peavy contests my determination that further leave to amend would be futile. She argues that she has additional facts which could be added upon amendment, particularly for the *Monell* claim. As I stated in my prior Order, she has been given numerous opportunities to plead causes of action in this case and offers no reason why she has been unable to "incorporate[] . . . specific facts with greater particularly" until this point. *See* Dkt. Nos. 1, 5, 14, 26, 28, 38. It was not clear error to refuse to grant her leave to try once more.

**CONCLUSION**

For the foregoing reasons, Peavy's motion for reconsideration under Federal Rule of Civil Procedure 59(e) is DENIED.

**IT IS SO ORDERED.**

Dated: August 18, 2026

William H. Orrick
United States District Judge

United States District Court
Northern District of California